STATE, BY WALTER F. MONDALE, ATTORNEY GENERAL,
v. WILFORD F. WIDEN AND OTHERS.
ROBERT V. GISSELBECK, APPELLANT.

128 N. W. (2d) 755.

May 15, 1964—No. 39,061.

*Dygert & Gunn,* for appellant.

*Walter F. Mondale,* Attorney General, *Perry Voldness,* Deputy Attorney General, and *Karl J. Herman,* Special Assistant Attorney General, for respondent.

ROGOSHESKE, JUSTICE.

Appeal from an order denying the owners of land a new trial in a condemnation proceeding wherein the state acquired title to 1.08 acres of a 40-acre tract for highway purposes and modified the access to the part remaining by eliminating all direct access and granting a substitute access by way of a service drive.

The primary issue raised is whether the court erred in not permitting the jury to include in its award damages for a claimed temporary, total loss of access from the time of the taking to the time when con-

struction of the service road would be completed. In addition, the owners claim they suffered prejudice because of inadequate jury instructions and because the court improperly restricted their cross-examination and erred in excluding admissible evidence.

The 40-acre tract is located in the village of New Brighton and is owned by appellant, Robert V. Gisselbeck, and Gloria B. Gisselbeck. It is zoned for residential use and, at the time of the taking and the trial, was completely vacant and unimproved. Sewer, water, and gas were available to the tract but no steps had been taken to develop the land as a residential subdivision, which was its agreed highest and best use. The south boundary of the tract has 950 feet of frontage on Highway No. 100. In a previous condemnation proceeding, all direct access to the highway had been taken except a 60-foot access opening extending east from the southwest corner. The only other access was provided by a dirt road abutting a portion of the tract on its north boundary located one-half mile north of Highway No. 100. The owners had not improved the 60-foot access opening but entered the property directly from Highway No. 100 by a gravel and dirt drive lying immediately west of their property and extending northeasterly across the west boundary. This roadway remained open after the taking effected by this proceeding and was used by the court and the jury to view the tract during the trial.

By this proceeding, the state took a strip of land containing 1.08 acres extending along the entire south boundary for the purpose of reconstructing Highway No. 100 from a two-lane highway into a controlled-access, four-lane highway. In addition, the 60-foot, direct-access opening was eliminated and the owners were granted a 56-foot access opening into a service road on the east boundary at the southeast corner of the tract. This service road, according to the construction plans, is to be constructed on the state's right-of-way, terminating in a cul-de-sac at the owners' tract and extending therefrom easterly and somewhat parallel to Highway No. 100 to Silver Lake Road, a north-south roadway located about 1,300 feet east of the owners' land. The Silver Lake Road, also known as Fairchild Avenue, will be part of an interchange designed to cross over and provide entrance to, and exit

from, Highway No. 100 by a system of ramps. It is readily conceded by the state that this change will require the owners to travel a circuitous route to reach their property from the highway and that it substantially reduces their previous right to direct access.

The taking was effective on March 19, 1962, when the commissioners' award was filed. The trial upon appeal from the award was completed on December 6, 1962. At the time of trial, construction had not commenced and the owners now contend that all right of direct access was eliminated on March 19, 1962, and, since the substituted access has not been constructed, the court should have allowed recovery for a temporary, total loss of all access.

The state concedes that a landowner may be entitled to damages for a temporary loss of access in a partial taking where all access to the property remaining is denied for an unreasonable period during construction,[1] but it asserts that no sufficient foundation for such a claim was established. We agree. There is no evidence suggested by an offer of proof or otherwise which tends to support the owners' post-trial assertions that construction would be delayed for 3 or 4 years and that during that period they would have no access from Highway No. 100. It is true that the right to control direct access was acquired, but there is no evidence that the owners were denied the use of the existing access, or that temporary access would not be permitted during construction. Had such a claim been raised during trial, the state expresses its willingness, reasserted upon oral argument, to stipulate that temporary access would be provided pending completion of the construction of the service road. Such a stipulation would be consistent with the petition granting limited access to the owners and, according to the state, required by Minn. St. 160.18, subd. 2.[2] Moreover, should the

---

[1] See, Stock v. Cox, 125 Conn. 405, 6 A. (2d) 346; Anhoco Corp. v. Dade County (Fla.) 144 So. (2d) 793; People ex rel. Dept. of Public Works v. Schultz Co. 123 Cal. App. (2d) 925, 268 P. (2d) 117.

[2] Minn. St. 160.18, subd. 2, provides: "Except when the easement of access has been acquired, the road authorities in laying out and constructing a new highway or in relocating or reconstructing an old highway shall construct suitable approaches thereto within the limits of the right of way

remaining property of the owners become completely landlocked during construction, we fail to see how the owners' right to a limited access would not then mature and entitle the owners to seek damages by a separate action. We therefore hold that the owner's claim of a temporary, total loss of access has no evidentiary foundation which would have required its submission.

We have carefully examined the court's instructions and find that they adequately submitted the owner's theory that substantial damages to the remaining land resulted from a change in access requiring a circuity of travel to reach their property from Highway No. 100. We do not agree that the instructions, which we must consider as a whole,[3] permitted the jury to reduce the award because a service road could be found to be an "advantage" in the form of a special benefit to their remaining land. The state conceded damages because of circuity of travel, and although the use of the word "advantage" in the charge might have been inadvisable, it was not misleading. Consistent with the state's claim, the instructions merely permitted the jury to find from the evidence that the change in access requiring circuity of travel did not substantially diminish the market value of the part remaining after the taking.

We have examined the owner's claims that the court prevented him from asserting a claim for temporary, total loss of all access during construction and that the court unduly restricted cross-examination of the

---

where the approaches are reasonably necessary and practicable, so as to provide abutting owners a reasonable means of access to such highway."

The state asserts that this statute requires the highway department to provide for access at all times during the construction period. Such a construction of this statute has not been made by either this court or the attorney general. In view of the provisions of the other subdivisions in the section and the Report of Interim Commission on Highway Laws 1958, p. 23, we are doubtful that the statute was intended to have any such effect. However, our disposition of appellant's contentions in regard to his claim of temporary loss of all access does not make it necessary for us to construe the statute. Cf. Opinion Attorney General, No. 377-B-8, June 2, 1950; Opinion Attorney General, No. 377-A-3, May 31, 1946.

[3] Zurko v. Gilquist, 241 Minn. 1, 62 N. W. (2d) 351.

state's value witnesses. We find it unnecessary to detail these contentions because we are persuaded that they are without merit and that no prejudice resulted to the owner.

Affirmed.

